## UNITED STATES *v.* MINNIE ATKINS ET AL.

## NANCY ATKINS ET AL. *v.* UNITED STATES, MINNIE FOLK, NÉE ATKINS, ET AL.

APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

Nos. 45, 46. Argued October 11, 12, 1922.—Decided November 20, 1922.

An act of the Commission to the Five Civilized Tribes in enrolling a name as that of a Creek Indian alive on April 1, 1899, amounted, when duly approved by the Secretary of the Interior, to a judgment in an adversary proceeding, establishing the existence of the individual and his right to membership, and is not subject to be attacked by the United States in a suit against those who claim his land allotment, in which the Government alleges that the person enrolled never existed and that the enrollment was procured by fraud on the Commission and resulted from gross mistake of law and fact. P. 224.

268 Fed. 923, affirmed.

APPEALS from a decree of the Circuit Court of Appeals affirming a decree of the District Court in a suit brought by the United States upon the grounds of fraud and mistake to cancel an enrollment on the Creek tribal roll and an allotment certificate and patent issued thereunder,

and to quiet the title to the land so allotted in the United States and the Creek Nation, as against the defendants and interveners, who claimed under such enrollment and allotment. The District Court dismissed the bill, *quoad* the United States, and adjudicated the title as between the other parties.

Mr. *H. L. Underwood*, with whom Mr. *Solicitor General Beck* and Mr. *Assistant Attorney General Riter* were on the brief, for the United States.

The finding of the Dawes Commission was subject to impeachment at the suit of the United States for fraud or mistake.

The Government's bill alleged that through the connivance of Minnie Atkins the name of Thomas Atkins was placed upon the 1895 roll of Creek citizens as a member of her family. The materiality of this lay in the fact that the Dawes Commission, in preparing the final citizenship roll from which allotments of Creek tribal lands were made, relied upon and accepted this 1895 roll as evidence showing those who were entitled to enrollment.

Had there been a hearing, with the United States or the Creek Tribe actively contesting the enrollment of the name of Thomas Atkins,—had witnesses been heard on the question of whether he ever existed, the decision of the Commission would have been impervious to attack. *Vance v. Burbank*, 101 U. S. 514; *United States v. Wildcat*, 244 U. S. 111.

The rule of *Vance v. Burbank* has only been applied, in this Court at least, to cases where there has been a contest proceeding where full hearing has been had and testimony introduced or the opportunity to do so given. *De Cambra v. Rogers*, 189 U. S. 119; *Estes v. Timmons*, 199 U. S. 391; *Love v. Flahive*, 205 U. S. 195; *Ross v. Stewart*, 227 U. S. 530; *Ross v. Day*, 232 U. S. 110.

The District Court, however, seemed to consider the fact that the Creek Council had notice of the proceedings before the Commission, and hence might have made objection to the enrollment of any name, rendered the proceeding an adversary one. Mark, the notice was not as to this specific individual case, but general notice or knowledge that the Commission was making inquiry and determination upon which to predicate enrollments generally.

The Government has fully as much notice of proceedings to acquire public lands as it had of the Dawes Commission proceedings, and yet the former are held to be *ex parte,* and fraud intrinsic therein is held ample basis for relief in equity. *McCaskill Co.* v. *United States,* 216 U. S. 504; *Diamond Coal & Coke Co.* v. *United States,* 233 U. S. 236; *Washington Securities Co.* v. *United States,* 234 U. S. 76. The same is true of naturalization proceedings. *Johannessen* v. *United States,* 225 U. S. 227; *United States* v. *Ness,* 245 U. S. 319.

In *United States* v. *Minor,* 114 U. S. 233, a suit to cancel a patent for fraud, this Court distinguished *Vance* v. *Burbank,* and definitely pointed out the scope and extent of the rule of the latter case. That the rule of the *Vance Case* is limited to cases where there has been a hearing in which the issues sought to be impeached have been tried, is evidenced by a later statement in *Hilton* v. *Guyot,* 159 U. S. 113, 207. See *Chicago, Rock Island & Pacific Ry. Co.* v. *Callicotte,* 267 Fed. 799; certiorari denied, 255 U. S. 570; *Marshall* v. *Holmes,* 141 U. S. 589; *Wells Fargo & Co.* v. *Taylor,* 254 U. S. 175. The decision in *United States* v. *Wildcat* is not to the contrary, for it is plainly limited to cases other than those involving fraud or mistake.

Independently of the question of fraud, we contend that if no such person as Thomas Atkins ever existed, the enrollment of that name as a citizen of the Creek

Nation and the allotment and patenting of a tract of land in his name was a nullity and conveyed no title, and that no rights or interest thereunder could vest in any person. Cf. *Iowa Land & Trust Co.* v. *United States*, 217 Fed. 11; *Moffat* v. *United States*, 112 U. S. 24; *Thomas* v. *Wyatt*, 25 Mo. 24.

The Government asserts that all the parties defendant are strangers to the title to this land. Surely it is entitled to be heard on that issue.

The principle applicable to this case is that of *Scott* v. *McNeal*, 154 U. S. 34.

'Equity will grant relief against a judgment, the enforcement of which would be unconscionable, or which was rendered through mistake or accident, the party seeking relief not knowing of the existence of a defense or being prevented from availing himself of it by accident or mistake. *Pickford* v. *Talbott*, 225 U. S. 651.

The evidence establishes, and the courts below should have found, that Thomas Atkins was a myth; hence the patent issued in his name conveyed no title. *Vitelli & Son* v. *United States*, 250 U. S. 355.

*Mr. Joseph M. Hill*, with whom *Mr. Napoleon B. Maxey*, *Mr. Malcolm E. Rosser* and *Mr. Henry L. Fitzhugh* were on the briefs, for Nancy Atkins et al.

*Mr. C. B. Stuart*, with whom *Mr. E. C. Hanford*, *Mr. M. K. Cruce* and *Mr. Lee Bond* were on the briefs, for Minnie Atkins et al.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Under authority of acts of Congress the [Dawes] Commission to the Five Civilized Tribes enrolled Thomas Atkins as a Creek Indian alive on April 1, 1899; the Secretary of the Interior approved; an allotment was selected for him; a patent issued and was recorded as required by

law. Minnie Atkins undertook, as his sole heir, to convey the land to certain named defendants. Alleging that Thomas Atkins never existed and that his enrollment came about through fraud and gross mistake of law and fact, the United States brought this proceeding against many defendants to annul the allotment certificate and patent and to quiet title in the Tribe.

Minnie Atkins maintains that the enrolled Thomas was her son; that he was born prior to April 1, 1899, and died thereafter, leaving her as sole heir. Nancy Atkins claims to be the mother and sole heir. She filed a cross bill asking that the title to the land be confirmed to her and those claiming through her. Henry Carter asserts that he is the individual enrolled as Thomas Atkins.

The trial court ruled that the enrollment by the Commission amounted to an adjudication that Thomas Atkins was a living person on April 1, 1899, entitled to membership; that this finding was not subject to collateral attack under a mere allegation of his nonexistence; and that it could not be annulled for fraud unless the fraud alleged and proved was such as to have prevented a full hearing within the doctrine approved by *United States* v. *Throckmorton,* 98 U. S. 61; *Vance* v. *Burbank,* 101 U. S. 514; *Hilton* v. *Guyot,* 159 U. S. 113. The relief asked by the United States was accordingly denied. Having considered the voluminous testimony, it found Minnie Atkins to be the mother of Thomas and owner of the land subject to the rights of those claiming under her. The Circuit Court of Appeals affirmed a final decree embodying these conclusions. 233 Fed. 177; 268 Fed. 923.

In *United States* v. *Wildcat,* 244 U. S. 111, 118, 119, it was insisted that the Indian died prior to April 1, 1899, and that his enrollment as of that date was beyond the jurisdiction of the Dawes Commission and void within the doctrine of *Scott* v. *McNeal,* 154 U. S. 34. Much consideration was given to the statutes creating and defining

the powers of the Commission and the effect of an enrollment. This Court said:

"There was thus constituted a *quasi*-judicial tribunal whose judgments within the limits of its jurisdiction were only subject to attack for fraud or such mistake of law or fact as would justify the holding that its judgments were voidable. Congress by this legislation evidenced an intention to put an end to controversy by providing a tribunal before which those interested could be heard and the rolls authoritatively made up of those who were entitled to participate in the partition of the tribal lands. It was to the interest of all concerned that the beneficiaries of this division should be ascertained. To this end the Commission was established and endowed with authority to hear and determine the matter. . . .

"When the Commission proceeded in good faith to determine the matter and to act upon information before it, not arbitrarily, but according to its best judgment, we think it was the intention of the act that the matter, upon the approval of the Secretary, should be finally concluded and the rights of the parties forever settled, subject to such attacks as could successfully be made upon judgments of this character for fraud or mistake.

"We cannot agree that the case is within the principles decided in *Scott* v. *McNeal,* 154 U. S. 34, and kindred cases, in which it has been held that in the absence of a subject-matter of jurisdiction an adjudication that there was such is not conclusive, and that a judgment based upon action without its proper subject being in existence is void. . . . We think the decision of such tribunal, when not impeached for fraud or mistake, conclusive of the question of membership in the tribe, when followed, as was the case here, by the action of the Interior Department confirming the allotment and ordering the patents conveying the lands, which were in fact issued."

It must be accepted now as finally settled that the enrollment of a member of an Indian tribe by the Dawes

45646°—23——15

Commission, when duly approved, amounts to a judgment in an adversary proceeding determining the existence of the individual and his right to membership subject, of course, to impeachment under the well established rules where such judgments are involved.

The questions of fact relating to the conflicting claims advanced by Minnie Atkins, Nancy Atkins and Henry Carter have been determined in favor of Minnie by both courts below upon survey of all the evidence; and we find nothing which would justify us in overruling their well considered action.

*The decree of the court below is affirmed.*